## The Star Brewery Company v. Josephine Houck, Administratrix.

1. EXPERT TESTIMONY—*when incompetent.* It is unnecessary to call expert testimony to prove that a heavy team driven over a paved street at a rapid rate of speed would make a great deal of noise.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair County; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1905. Affirmed. Opinion filed March 22, 1906.

L. D. TURNER, for appellant.

WISE & McNULTY and WILLIAM P. LAUNTZ, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On August 21, 1902, between one and two o'clock in the afternoon, William Houck, then ten years ten months old, while playing with some other boys, was run over and killed by a wagon belonging to appellant, being driven north on Fourth street in the city of East St. Louis. His mother, Josephine Houck, was appointed administratrix and instituted this suit under the statute, for the benefit of the next of kin.

The three counts of the declaration alleged that at the time he was injured, deceased was upon said street in the exercise of due care for his own safety; that the defendant, by its servant, carelessly and negligently drove the horses

attached to said wagon at a fast and reckless rate of speed, upon deceased; that defendant's servant knew, or by the exercise of ordinary care could have known, that Houck, who was in plain view, was unaware of the approach of the wagon, and carelessly and negligently drove said horses upon him, at a high rate of speed without warning; that appellant's servant knew, or could have known, by the exercise of ordinary care, if he did not warn Houck of the approach of the horses and wagon or turn them to one side so as to avoid striking him he would be run over and injured; that he carelessly and negligently drove the horses at a high rate of speed upon Houck without warning him of the approach of the wagon or turning his horses aside to avoid striking him.

A trial was had and there was a verdict in favor of appellee for $3,000, which was set aside by the court and a new trial awarded. Afterwards appellee filed three additional counts, all setting up an ordinance of the city of East St. Louis, which provides that:

" No person shall ride or drive any horse, mule, or other animal in or through any street, or avenue, or alley, of the city of East St. Louis with greater speed than at the rate of six miles an hour, nor shall, in turning the corner of any street, avenue or alley in the city, ride or drive any such animal with greater speed than at the rate of four miles an hour, nor shall wilfully or heedlessly ride or drive any such animal so that the same, or any vehicle attached thereto, shall come into collision with any other animal or vehicle, or strike against any person, under a penalty in each and every case of not less than $5 nor more than $100."

The first of the additional counts alleged that the team was driven at a high rate of speed in excess of the speed allowed by the ordinance; the second that appellant by its servant " wilfully and heedlessly drove said wagon and team of horses in a wilful and heedless manner;" and the third that " defendant by its servant in violation of said ordinance carelessly and negligently drove said wagon and team of horses in a careless and negligent manner."

On the second trial there was a verdict in favor of appellee for $2,500, for which amount judgment was given by the court.

At the time of the injury deceased was playing tag with five other boys on Fourth street which is a public street fifty feet wide and paved with brick. At the same time Adolph Brooks, an employee of appellant, was driving two heavy horses hitched to a beer wagon, called a "roll," upon which there was a part of a load, engaged in delivering beer for appellant. It is claimed by appellant that as the driver came north on said street, Willie Houck, who was trying to catch and tag Louis Richards, was standing on the east side of the street and Richards on the west side thereof, a little north of Willie; that when the team was opposite the place where Willie was standing he suddenly started across the street to catch the other boy, ran in front of the horse on the right hand side next to the sidewalk, was knocked down by the horse and run over by the right hind wheel of the wagon; that another boy who was standing near Willie called to him to look out; that the horses were going at a slow rate of speed and the right hind wheel was about eight feet from the east curb of the street; that Willie was a bright boy, who could see and hear well; that the driver was driving his team at a moderate rate; that the injury was caused by an accident, which was the result of the carelessness of the deceased and which appellant's driver did nothing to bring about.

On the other hand appellee claims that as the wagon was going north on Third street Willie Houck ran across the street after Richards and that when Richards reached the curb stone, he stopped and faced Willie who also stopped and stood about six feet from the curb stone, facing north or northeast with his back to the approaching team; that when Willie stopped there the wagon was about eighty-five feet south of him; that as the wagon approached the driver struck his team either with the lines or a whip to hasten their gait, and as they reached Willie they were on a lope or fast trot; that the street was unoccupied by other teams;

that the driver had full opportunity of seeing the boy standing in front of the wagon and of either warning him or turning his team aside; that he did neither, but at the time was looking across to the other side of the street and drove upon the boy; that prior to the time he ran into Willie he noticed the boys playing ahead of the wagon a short distance from the curb.

Each side introduced evidence tending to sustain its claim as to the facts, but the preponderance appears to have been on the side of appellee, and the jury were therefore justified in sustaining her claims as to the facts.

Appellant objected to the introduction of the ordinance referred to in the special counts and above set out, on the ground that there was no evidence showing that the team was going faster than six miles an hour and claims that the court erred in overruling the objection.

One witness for appellee swore that the team was going on a fast trot, a kind of a lope, when it struck Willie, another that it was going in a fast trot, about twice as fast as a man could walk, another that it was going in a pretty fast trot, but not as fast as they could run, another a fast trot, and still another that the team was coming on a gallop; and the driver testified he was going about six miles an hour. Under this evidence it was a question for the jury to determine whether or not the team at the time in question was going at a greater rate than six miles an hour. But even if that were not so, the ordinance was properly admissible, for the reason that it contained a provision forbidding persons from wilfully or heedlessly riding or driving any animal so that the same, or any vehicle attached thereto, should come into collision with any other animal or vehicle or strike against any person, and the charge was made in two counts of the declaration that this provision of the ordinance was violated and evidence introduced to sustain the charge.

Counsel for appellant proved that the horses driven to appellant's wagon at the time of the injury weighed between 1300 and 1400 pounds each, and that the wagon

weighed 2250 pounds.   He then offered to prove that horses of that size attached  to a wagon of  that weight in  going over a  paved street would  made a great deal of  noise, but the court sustained  an objection on  the ground  that  the subject was not a matter for expert testimony.

Appellant earnestly insists that  it was competent to prove by expert witnesses that " these horses being heavy horses, shod all round, hitched to a wagon called a 'roll', would make a great noise" and further that " the defendant had no witness that saw the accident and could testify that the wagon was making a noise because he heard it, and hence it was competent for the defendant to prove by experts that such a team and wagon over a brick street would make such a noise that the deceased, if standing there, would surely have heard it."   As a matter of fact the driver of the wagon himself was a witness for defendant and could have been called upon to testify upon that subject, but in any event we cannot conceive that it would have been necessary to call expert witnesses to prove a fact so well known as that a team and wagon of the size and weight mentioned would make a great deal of noise in passing over a paved street, especially if the team was driven at a fast gait as this one is shown to have been.

Appellant also complains that the court modified certain of the instructions offered by it and refused others.   One of appellant's modified instructions might well have been given as offered, but the instruction as modified and given stated the law correctly and covered substantially all that was contained in the original instruction.   Some of the refused instructions were fully covered by instructions given, others infringed upon the rights of the jury to determine the facts or stated incorrect principles of law and were properly refused.   The instructions as a whole stated the law governing the case with substantial accuracy.

We find no reversible error in the trial of the case, and the judgment of the court below will accordingly be affirmed.

*Affirmed.*