The Lake Shore and Michigan Southern Railway Company

*v.*

Sarah M. Parker, Exrx.

*Filed at Ottawa January 21, 1890.*

1. Negligence—*negligence per se—not contributory to the injury.* While it is true that the omission of a duty imposed by positive law is negligence *per se,* yet such negligence becomes actionable, as a rule, only when it causes or contributes to the injury complained of.

2. So although the running of a railway train at a rate of speed of more than twelve miles an hour, in violation of an ordinance, may be negligence *per se,* yet it is a question of fact whether such negligence so far contributed to an injury complained of by the engineer having the train in charge, as to preclude a recovery.

3. Same—*contributory negligence—railway engineer approaching a switch—care required.* In a suit by an executor against a railroad company to recover for the death of the testator, a locomotive engineer, occasioned, as alleged, by the negligence of servants of the defendant company in leaving an open switch into which the train in charge of the testator was run, whereby he was killed, on the question of a want of due care on the part of the testator in approaching the switch, it was *held,* where the target showing whether the switch was open or closed was some distance off, and so obscured by smoke and steam from an engine on the side-track as that it could not be seen by an engineer approaching with his train, the failure of the engineer to stop his train or lessen its speed upon the mere suspicion or supposition that the switch was left open, is not necessarily conclusive evidence of a want of due care on the part of the engineer.

4. Under such circumstances, the engineer might well suppose that others had done their duty by closing the switch, making it safe for him to proceed; and this omission of greater care on his part should not be held, in general, as such negligence as to defeat a recovery for a personal injury received by him.

5. Whether an engineer in charge of a train used reasonable care in regulating the speed of the same to avoid an accident he could not foresee, depends upon the facts and circumstances surrounding him. It will not do to lose sight of other duties and responsibilities imposed upon him, in considering the question of care in regulating the speed of his train.

6. So an instruction that the moving of a train through an incorporated town at a greater speed than allowed by ordinance was gross

131 557
140 530
131 557
154 97
131 557
54a 390
131 557
60a 533
131 557
172 606
71a 153
131 557
81a 270
131 557
90a [1]136
131 557
96a[1] [4]335
131 557
195 [14] 52
131 557
103a [1]372
131 557
112a [1]565

negligence on the part of the engineer, and barred the right of recovery for any injury to his person, regardless of the fact whether the speed of the train contributed to the accident causing the injury, is erroneous, and properly refused.

7.  And instructions that it was the duty of the engineer, in approaching a switch with a train of cars, to observe the signal given by the switch target showing that the switch was open, and if he failed to do so no recovery could be had, are properly refused.  They are bad in making the duty of the engineer absolute, regardless of the degree of care and diligence used by him, and no matter what may have been done by servants and employes of the defendant to obscure or conceal the target.

8.  SAME—*non-observance of rules—whether negligence per se.*  In a suit by the executrix of a deceased locomotive engineer, against a railway company, to recover for his death from negligence, instructions which make the want of obedience to joint rules of the defendant company and another company, both using the same track, negligence *per se* on the part of the deceased, are erroneous, and properly refused.

9.  SAME—*negligence as a question of fact.*  Where rules and regulations of a railway company impose upon its engineers, etc., duties calling for the exercise of judgment, skill and diligence, but fail to command the doing or not doing of any particular act, the question whether a certain act or omission is a violation of such rules, is a question of fact.

10.  Whether an engineer, in approaching a switch in the night time, the view of which was obscured by smoke and steam from an engine on a side-track, used due care to observe the switch, or the target showing whether it was closed or open, and in approaching the switch, is a question of fact for the jury, and not one of law.

11.  The rules of a railway company provided, that when the view is from any cause obscured, engineers and conductors must control their trains so as to be able to stop within the range of their vision, and that delayed trains at certain places should run with great care and caution, and at all times under full control, etc.:  *Held*, that it was a question of fact whether the running of a train fourteen miles an hour was a violation of such rules, or whether it was negligence.

12.  APPEALS—*reviewing the facts.*  In an action to recover for personal injury caused by negligence, the question of the plaintiff's negligence or exercise of due care must be regarded as conclusively settled by the finding of the jury, and the affirmance of the judgment by the Appellate Court.

13.  INSTRUCTIONS—*construed—injury from negligence—limitation of time on question of due care.*  In an action against a railway company to recover for an injury to an engineer, received while in charge of a

train, by reason of a switch being left open, the court instructed the jury, that in determining whether the engineer, at the time of the accident, made use of all the care, etc., to avoid the accident which could reasonably be expected of a locomotive engineer of ordinary prudence, they might consider, etc.: *Held*, that the words used could not be construed as limiting the question of care to the instant of the accident. The care to avoid an accident must necessarily precede the time of the happening of the same.

14. Same—*as to measure of damages—whether a limitation as to the amount.* In an action to recover for wrongfully causing the death of the plaintiff's testator, the court instructed the jury, that if they should find for the plaintiff they might assess the plaintiff's damages at such a sum as would be a fair compensation, "with reference to the pecuniary injuries resulting from such death, to the widow and next of kin of J. C. P., the deceased, not exceeding the sum of $5000 :" *Held,* that the instruction was not open to the objection that it required a verdict for not less than $5000. By it the measure of recovery was the pecuniary loss sustained by the widow and next of kin, not to exceed that sum.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. Frank Baker, Judge, presiding.

Mr. Pliny B. Smith, for the appellant:

The accident was the result of a disregard by Parker of a well-known and established signal, and his disobedience of the established rules of his own company, and the joint rules of the two companies, and therefore, as a matter of law, the plaintiff can not recover.

The death of decedent having occurred by reason of his running past a switch when a signal warning him that it was set against his train was displayed upon the switch, such fact in itself prohibits a recovery. *Railway Co.* v. *Snyder*, 117 Ill. 376; *Lombard* v. *Railway Co.* 47 Iowa, 494.

Where a railroad employe receives an injury on account of the disobedience of a rule, he is barred from a recovery. *Railroad Co.* v. *Rush*, 84 Ill. 572; *Lockwood* v. *Railway Co.* 55 Wis. 66; *Abend* v. *Railroad Co.* 111 Ill. 202; *Railway Co.* v. *Roy*, 5 Bradw. 88; *Wolsey* v. *Railway Co.* 33 Ohio St. 227; *Rail-*

*road Co.* v. *Patterson,* 93 Ill. 290 ; *Railroad Co.* v. *Neer,* 26 Ill. App. 356 ; *Lyon* v. *Railroad Co.* 31 Mich. 429 ; *Railroad Co.* v. *Thomas,* 51 Miss. 637.

The accident was the result of the violation by the deceased of an ordinance of the town of Lake.   Conduct of an employe which will make a railway company liable in damages, will be a bar to an action for an injury resulting to the employe himself.   *Railroad Co.* v. *Patterson,* 93 Ill. 293.

The second of appellee's instructions was faulty in fixing the care, etc., of himself at the time of the accident, and not requiring care at and before the injury.   *Railroad Co.* v. *Weldon,* 52 Ill. 290 ; *Railroad Co.* v. *Warner,* 108 id. 538 ; *Railroad Co.* v. *Sykes,* 1 Bradw. 520.

The fifth instruction tells the jury, that if they find for the plaintiff, they may assess the damages at a sum not exceeding $5000.   *Railway Co.* v. *Austin,* 69 Ill. 426.

Mr. John McGaffey, and Mr. John T. Richards, for the appellee :

To warrant the withdrawal of the case from the jury, the evidence must have shown rashness, or culpable negligence of the injured person, so clearly as not justly or fairly to admit of any other conclusion.   *Parker* v. *Railroad Co.* 20 Bradw. 280 ; *Kane* v. *Railway Co.* 128 U. S. 91.

The fact that the train was run more than twelve miles an hour, in violation of the ordinance, will not defeat a right of recovery.   *Railroad Co.* v. *Reidy,* 66 Ill. 43 ; *Railway Co.* v. *Deacon,* 63 id. 91 ; *Railroad Co.* v. *Haggerty,* 67 id. 113.

Mr. Justice Wilkin delivered the opinion of the Court :

This is an action on the case, brought by appellee, against appellant, for negligently causing the death of her husband, John C. Parker.   There are two counts in the declaration, both in the usual form, except that the second fails to allege that the deceased left surviving him, next of kin.   The negli-

gent act by which death was caused is in both counts charged to be leaving a certain switch open, whereby the engine then driven by deceased was diverted from its track, and caused to collide with another engine on a side-track. A trial in the circuit court of Cook county, the Hon. Frank Baker, Judge, presiding, resulted in a verdict and judgment for appellee, for the sum of $5000, and costs of suit. On appeal to the Appellate Court for the First District that judgment was affirmed, and appellant now prosecutes this further appeal.

It appears that at the time of his death, deceased was employed as a locomotive engineer on the railway of the Chicago, Rock Island and Pacific Railway Company, running into the city of Chicago from the south. Between Englewood and the city depot, a distance of some six miles, this company and appellant used the same main tracks, along which, at frequent intervals, were switches under the exclusive control of appellant. These were supplied with targets, which served as signals to indicate whether the switch was open or closed, One of these switches was at Forty-fourth street, at which place appellant maintained extensive yards on either side of the main track. This switch was on the west side of the west track, and, when open, would divert a train from the east main track to a side-track in the east yard. On the 7th of November, 1883, as Parker, in charge of a locomotive attached to a train of passenger cars, approached this switch from the south, he discovered that it was open, but too late to stop his train before being thrown on the side-track and in collision with a locomotive and train belonging to appellant, thereby causing his death.

The theory of appellee's case is, that the employes of appellant had negligently left the switch open, and in a condition dangerous to trains approaching from the south; that deceased was in the exercise of reasonable care as he approached the same, and therefore appellant is liable. The first of these positions is not controverted by appellant. The second is

strenuously denied, and upon its determination the result of the case rests. It presents a controverted issue of fact, and the finding of the jury, affirmed by the judgment of the Appellate Court, is conclusive against appellant's contention, and that issue can not be re-tried in this court.

Appellant seeks to avoid this result upon the theory that there is no evidence tending to support that finding, but, on the contrary, the undisputed facts show that deceased was himself guilty of gross negligence contributing to his death, and therefore the question of his negligence becomes one of law, and not of fact. The conclusion is not warranted by the evidence. It shows that deceased approached the switch at the "usual speed;" that he was at his proper place on the engine, and had it under control; that he remained at his post to the last moment,—in short, the evidence at least tends to show that he did everything which it was his duty to do under the circumstances, unless it can be said that the rate of speed at which he approached the switch should be held conclusive proof of negligence, or, as is argued by counsel, that whether he could see the switch target or not, he was bound to know its position, and so regulate the speed of his train as to be able to stop it before running into the open switch, and if he did not, he was guilty of negligence, as a matter of law. The testimony of the fireman shows that for some distance south of the switch the target was so obscured by smoke and steam from an engine on a side-track near by, that it could not be seen from the cab of Parker's engine. To say, that notwithstanding this fact the deceased was bound to assume, or even suspicion, that the switch might be open, and stop his train, or put it so under control that he could stop it, before reaching the switch, and that a failure to do so is conclusive proof of negligence, seems so unreasonable as to refute itself. In such case, Parker would certainly have the right to suppose that others had done their duty by closing the switch. Little progress could be made by trains if any other rule should be adopted.

*Railroad Co.* v. *Snyder*, 117 Ill. 376, is supposed to support appellant's position. It was not claimed in that case that Snyder, the deceased, could not, or that he did not, see the signal. The contention by his administrator was, that the signal was given for him to pass the crossing, which he was attempting to obey when the signal changed, but too late for him to stop his train and avoid the collision. On the other hand, it was insisted that the signal was not given for him to cross, but the train with which he collided. The instruction referred to by counsel, and which we held should have been given, simply announced that if the jury found, from the evidence, that the signal was for the train with which Snyder collided, and not for him, his administrator could not recover. In *Lombard* v. *Chicago, Rock Island and Pacific Railroad Co.* 47 Iowa, 499, it is expressly stated that the signal was seen, and so, in the other cases cited, it was seen, or could have been seen by looking.

It was unquestionably the duty of the deceased, taking into consideration all the facts and circumstances,—obscurity of the vision, with others,—to approach the switch with care. He was not bound to suppose or suspicion that defendant's servants had been guilty of a reckless omission of duty in leaving it open. Whether he used due care to observe the target and in approaching the train, was therefore clearly a question of fact.

The jury found, that as the train in charge of deceased approached the switch it was running between fourteen and eighteen miles an hour. This, it is said, under the circumstances, and rules of the two companies offered in evidence, was gross negligence on the part of the deceased, and absolutely precludes a recovery by his administratrix. It is not pretended that this rate of speed is ordinarily dangerous, but the contention is, that the view of the target of the switch being obscured, the train being behind time, the fact that a switch was known to be at that place, and that it was near a

station, made it imperative upon deceased, under the rules of his own and the defendant company, to run at a less rate of speed. Such of the rules referred to as are material for the consideration of this point are:

*First*—"When the view is, from any cause, obscured, engineers and conductors must control their trains or engines so as to be able to stop within the range of their vision.

*Second*—"Delayed trains, between Englewood and Chicago, must run with great caution, and at all times under full control.

*Third*—"That all trains must approach stations with reduced speed, and with care.

*Fourth*—"That in approaching switches the greatest care must be taken."

It will be seen that no one of these rules commands the doing or not doing of a particular act or acts. They each impose upon the engineer duties calling for the exercise of judgment, skill and diligence. In other words, they simply call attention specifically to the exercise of that care which the law imposes upon every engineer. Therefore, whether running a train fourteen miles an hour was a violation of these rules, is as much a question of fact as would have been the question, was deceased guilty of negligence had there been no rules. *Galena and Chicago Union Railroad Co.* v. *Dill*, 22 Ill. 264; *Burkett* v. *Bond*, 12 id. 87; *Toledo, Peoria and Warsaw Railroad Co.* v. *Foster*, 43 id. 415.

Negligence is not a legal question, but one of fact. *Great Western Railroad Co.* v. *Haworth et al.* 39 Ill. 353; *Chicago and Alton Railroad Co.* v. *Pennell*, 94 id. 455; *Pennsylvania Co.* v. *Conlan*, 101 id. 106.

We need scarcely suggest that these rules can not have the effect given to those in cases cited by appellant, as, where one takes a seat upon a locomotive, or steps on the foot-board of an engine in motion, or attempts to couple cars while in motion, or to make a coupling by hand instead of using a stick, in each of which cases the rules of the company prohibited

the doing of the act. If, in this case, the rules had limited the rate of the speed of trains to less than fourteen miles an hour when the view was obscured, or on approaching switches, or when trains were behind time, the cases cited would have been in point; but in the absence of such a regulation they have no bearing upon this case. We are not to be understood as holding that it was not the duty of deceased to exercise a high degree of care and skill in the observance of these rules, and in the use of all other reasonable precautions to avoid the accident, or that his failure to do so would not constitute such negligence as, would defeat a recovery. The law does not, however, in such case, require infallibility. It is a question, after all, of due care under the facts and circumstances surrounding the party. It will not do to lose sight of all other duties and responsibilities imposed upon an engineer, when we are considering whether or not he has used reasonable care in regulating the speed of his train to avoid an accident which he could not foresee. It was Parker's duty to get his train to the Chicago depot. He was not allowed unlimited time to do so. It was his duty to keep out of the way of other trains, and he owed many other duties to his company and the passengers in his charge which he could not ignore. It may be that the jury should have found, from the facts proved, that Parker was guilty of negligence contributing to the collision which caused his death. That was a question for the trial court, and finally for the Appellate Court. With it we have nothing to do.

Appellant also offered in evidence an ordinance of the town of Lake, through which the train in question was running when the accident occurred, prohibiting passing trains from running at a greater rate of speed than twelve miles an hour. Counsel say the accident was the result of the violation of this ordinance, and therefore, as a matter of law, there can be no recovery. If the premise was correct, the conclusion would be inevitable. But who is to determine the fact as to what caused

the accident? It is remarkable that throughout the argument of this case on behalf of appellant the open switch is lost sight of entirely. That was the fatal cause of Parker's death. The only question is, did his conduct so far contribute to the accident as to bar recovery. While it is true that the omission of a duty imposed by positive law is negligence *per se*, yet such negligence becomes actionable, as a rule, only when it causes or contributes to the injury complained of. (*Indianapolis and St. Louis Railroad Co.* v. *Blackman*, 63 Ill. 117; *Chicago, Burlington and Quincy Railroad Co.* v. *Van Patten, Admr.* 64 id. 510.) So in this case, while it may be said that running the train more than twelve miles an hour, in violation of the ordinance, was negligence *per se*, (and the court below so instructed the jury,) yet the question of fact remains, did that negligence so far contribute to the injury as to preclude a recovery by appellee.

The only questions of law raised on the record are on the giving and refusing of instructions.

The second of appellee's instructions uses the language, "that in determining whether John C. Parker, *at the time* of the accident, made use of all the care, exertion and skill to avoid the accident in question which could be reasonably expected of a locomotive engineer of ordinary prudence, care and skill, it is proper for the jury to take into consideration," etc. The criticism made upon it is, that the words, "*at the time*," are used. It is said the language should have been, "before and at the time." The argument is, that without the word "before" the jury would be led to believe, that however negligent the deceased may have been in conduct leading up to and causing the collision, still, if at the very time of the accident he was in the exercise of due care, the plaintiff could recover. This, to say the least, is placing a very low estimate upon the intelligence of a jury. Certainly, no one would construe the words here used to mean, at the instant of the collision. How could a person "use care, exertion or skill to avoid the acci-

dent" when it was actually taking place? The authorities cited in support of this objection are inapplicable.

The fifth instruction given on behalf of the plaintiff is on the measure of damages, and directs the jury, "that if they find for the plaintiff they may assess the plaintiff's damages at such a sum as will be a fair compensation, with reference to the pecuniary injuries resulting from such death to the widow and next of kin of John C. Parker, deceased, not exceeding the sum of $5000." It seems to be thought that this instruction is subject to the same objection sustained by this court to that given in *Chicago, Rock Island and Pacific Railroad Co.* v. *Austin, Admr.* 69 Ill. 426. That instruction was as follows: "The jury are instructed, that by the statute of Illinois the plaintiff in this case can not recover more than $5000; and if they believe, from the evidence, that the plaintiff is entitled to recovery, they will render a verdict for no more than that amount." Breese, C. J., rendering the opinion, said, "that is but telling the jury they must render a verdict for $5000." Can the same be said of this instruction? Certainly not. Here the jury are expressly told that the measure of recovery is the pecuniary loss sustained by the widow and next of kin by the death, but that recovery can not exceed $5000. There is no error in this instruction.

Appellant asked twenty instructions. The sixth, fourteenth and seventeenth were given as asked. The fourth and seventh were modified and given, and the remaining fifteen refused. No point is made as to the modification of the fourth and seventh. Of those refused, the first directed the jury to find for the defendant on the evidence; the second, that there could be no recovery on the second count of the declaration. The others are somewhat lengthy, and no good purpose would be subserved by setting them out at length. They are all objectionable. The third assumes that deceased was, at the time of the accident, running his train at so great a rate of speed as to put it out of his immediate control, and then tells the jury that for

that reason there can be no recovery. The fifth is argumentative, but particularly objectionable in that it imposed upon the deceased the duty of running his train so as to be absolutely able to stop it in time to avoid a collision on the side-track in case a switch should be left open. Under this instruction, however diligent and careful the deceased may have been in the management of his train, he could not recover. The eighth announces, as a rule of law, that running a train through the town of Lake at a greater rate of speed than allowed by the ordinances of said town was gross negligence in deceased, and barred plaintiff's right of recovery, regardless of the fact as to whether the speed of the train in any way contributed to the accident causing his death. The law is not so unreasonable. On this subject the jury were properly instructed in appellee's first and seventh given. The ninth, eleventh, twelfth, thirteenth, fourteenth and fifteenth are each to the effect that it was the duty of the deceased to observe the signal given by the switch target showing that the switch was open, and if he did not do so, plaintiff could not recover. Here, again, the duty is made absolute and imperative, regardless of the degree of care and diligence used by deceased. No matter what may have been done by appellant's employes or others to obscure or conceal the target, still, under these instructions there could be no recovery. There is no evidence upon which to base the sixteenth. The eighteenth, nineteenth and twentieth are based upon joint rules of appellant and the Chicago, Rock Island and Pacific Railway Company, and of the latter company. They are all erroneous, for the reason that they make the want of obedience to such rules, negligence *per se* on the part of deceased.

The court very properly refused all these instructions, both because they do not correctly state the law, and also because those given on behalf of appellant fully and fairly instructed the jury as to the law applicable to the defense interposed.

We find no substantial errors in this record, and the judgments of the circuit and Appellate courts will be affirmed.

*Judgment affirmed.*